FILED

March 31, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 11:42 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT NASHVILLE

| | | |
|---|---|---|
| Eldon B. Jackson, | ) | Docket No. 2016-06-1429 |
| Employee, | ) | |
| v. | ) | |
| Express Services, Inc., | ) | State File No. 46125-2016 |
| Employer, | ) | |
| And | ) | |
| New Hampshire Insurance, | ) | Judge Joshua Davis Baker |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER DENYING PAYMENT OF PAST MEDICAL EXPENSES

This claim came before the Court on March 14, 2017, on the Request for Expedited Hearing filed by Eldon B. Jackson. The focus of this case is whether Mr. Jackson is entitled to payment for past medical expenses. Express Services, Inc. opposes his request for payment, arguing that Mr. Jackson's alleged injury did not arise primarily out of the course and scope of employment. For the reasons below, the Court holds Mr. Jackson is unlikely to prevail at a hearing on the merits in proving his entitlement to payment of past medical expenses.

### Claim History

This claim concerns an unfortunate series of events that resulted in Mr. Jackson's accumulation of substantial medical costs due to a misdiagnosis. Mr. Jackson seeks recovery of those medical costs.

Mr. Jackson worked for Express Services, a company that provides laborers to other businesses. Express assigned Mr. Jackson to work for Martinrea International, Inc., a manufacturer of automobile parts located in Hopkinsville, Kentucky.

On June 16, 2016, Mr. Jackson spent the morning at Martinrea inspecting welds on a rear-axle assembly. Mr. Jackson estimated each piece weighed between thirty-five and forty-five pounds. He lifted each assembly three times to perform the inspection then placed the inspected assembly on a rack for transport to another area of the plant. He

stated the temperature in the plant would reach between 105 and 115 degrees in the course of his shift.

Mr. Jackson testified that, around 9:00 a.m., he went the lunchroom for the first morning break. At the end of his break, he "went to get up, and [he] was in excruciating pain." He stated he also experienced difficulty breathing. Mr. Jackson reported his condition to the line supervisor who took him to the onsite nurse. The nurse checked his heart rate and took his blood pressure. Mr. Jackson then called Express and reported his condition.

Linda Baker, an Express employee, drove to the jobsite and picked up Mr. Jackson sometime between 10:00 and 10:30 a.m. that same day. She believed Mr. Jackson injured his shoulder from lifting based upon the call she received from Martinrea, Mr. Jackson's description of his pain, and the manner in which he gripped his shoulder. After picking Mr. Jackson up from the jobsite, Ms. Baker drove him to Clarksville, Tennessee, where she had scheduled a doctor's appointment for him at 1:10 p.m. that afternoon.

During the drive back to Clarksville, Ms. Baker told Mr. Jackson about the scheduled doctor's appointment. While in route, Mr. Jackson's wife, a paramedic, called him numerous times imploring him to seek emergency medical treatment believing that his symptoms indicated a possible cardiac event. Mr. Jackson told Ms. Baker, "she thinks I'm having a heart attack." Ms. Baker asked him if he were having trouble breathing or having any chest pain and told Mr. Jackson that she would pull over and call 911 if he thought he was having a heart attack. According to Ms. Baker, Mr. Jackson replied that he was not having trouble breathing or having chest pain, and stated, "No, I am perfectly fine, I just need to see a doctor for my shoulder." In his testimony, Mr. Jackson admitted, "he did not think he needed to go to the emergency room right away," but he denied he told Ms. Baker that his chest did not hurt.

After Ms. Baker and Mr. Jackson arrived at Express' office around 12:00 p.m., his wife came to the office and insisted that Mr. Jackson go to the emergency room. Mr. Jackson conceded to his wife's request despite Ms. Baker's warning that the visit would not be covered under workers' compensation.

Mr. Jackson's wife drove him from Express' office to the emergency room in Clarksville, where providers diagnosed Mr. Jackson with aortic dissection. Based on this diagnosis, a life-flight helicopter transported him to Vanderbilt Medical Center for emergency surgery. Upon arrival, Dr. Matthew Danter recognized the diagnosis of aortic dissection was incorrect and halted the emergency surgery. Dr. Danter later diagnosed costochondritis, an inflammation of costochondral cartilage. Mr. Jackson admitted he did not tell doctors at the emergency room in Clarksville that he suffered from costochondritis because it never entered his mind that his symptoms resulted from costochondritis.

2

Mr. Jackson attributed the recurrence of costochondritis to heavy, repetitive lifting in the hot, factory environment at Martinrea. He said he developed the condition during military service. He also stated the condition has "no definitive causes," but "it can be related to chest injuries, repetitious lifting, [and] being hit in the chest hard."

During the hearing, Mr. Jackson stated he seeks reimbursement of outstanding medical bills incurred from emergency care received on the date of his alleged work injury. Although he presented no bills, he testified the cost of the entire incident was approximately $100,000 of which private insurance covered all but $4,000 to $5,000. Mr. Jackson asserted that it was reasonable for him to seek emergency care rather than waiting to attend the scheduled appointment given his concern about a heart attack.

Express argued Mr. Jackson's costochondritis was a pre-existing condition, and his employment did not aggravate his costochondritis nor necessitate its medical treatment. Express further argued that, while it might have been reasonable for him to seek emergency care from a personal standpoint, it was unreasonable to expect his employer to pay for emergency care without proof his condition was work-related.

### Findings of Fact and Conclusions of Law

Mr. Jackson has the burden of proof on all essential elements of his workers' compensation claim and, at an expedited hearing, must present evidence from which this Court can determine he is likely to prevail at a hearing on the merits. *See Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015); *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). The Court finds he failed to carry his burden of proof.

Under the Workers' Compensation Law, an employer is required to furnish an employee all medical treatment "made reasonably necessary by accident as defined in this chapter." An "accident" is the equivalent of "injury," and does not include aggravation of a preexisting condition unless, "the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14). In all but the most simple and obvious cases, an employee must prove causation of his injury by expert medical proof. *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991). In addition, the Appeals Board has held that an employee's testimony, without corroborative expert testimony, does not constitute adequate evidence of medical causation. *Scott,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *12.

The misdiagnosis of an aortic dissection at the Clarksville emergency room, which prompted him being flown to Vanderbilt via helicopter, was apparently the primary cost-driver of Mr. Jackson's significant medical bills. It is clear, however, that Mr. Jackson did not have an aortic dissection, and Vanderbilt eventually diagnosed him with a

3

recurrence of costochondritis. Accordingly, in order to prevail in this cause for recoupment of payment for medical treatment, Mr. Jackson must prove a causal link between the recurrence of costochondritis and his work for Express.

The cause of Mr. Jackson's reoccurrence of costochondritis is not simple or obvious, which means he must prove its cause by expert medical proof. At the hearing, he offered his lay opinion that heavy, repetitive lifting in an area lacking air conditioning triggered a recurrence of his pre-existing condition. However, he did not introduce a physician's opinion to establish any connection between the recurrence and his employment. Furthermore, even if he had presented a physician's opinion supporting his position, Mr. Jackson failed to present the medical bills for which he seeks payment. In the end, without medical proof that the recurrence of costochondritis was causally related to his work for Express, the Court finds he is not likely to prevail at a hearing on the merits in proving he suffered an injury as defined by the Workers' Compensation Law. Therefore, the Court holds that Mr. Jackson is not entitled to reimbursement of medical expenses at this time. This ruling does not, however, prevent Mr. Jackson from marshalling additional proof concerning the causal relationship between the recurrence of his costochondritis and his work for Express and presenting it at a compensation hearing.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Jackson's request for payment of past medical expenses is denied at this time.

2. This matter is set for a Scheduling Hearing on Monday, May 15, 2017, at 8:30 a.m. (CDT). This hearing will take place via telephone. The parties must dial 615-741-2113 or 855-874-0474 toll-free to participate in the hearing.

**ENTERED THIS THE 31ST DAY OF MARCH, 2017**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:

1. Medical records
2. Mr. Jackson's affidavit
3. Physician panel form
4. Wage Statement with attachment

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Express Services' motion to compel
5. Order granting Express Services' motion to compel
6. Express Services' motion to dismiss
7. Notice of deposition
8. Notice of hearing motion to dismiss
9. Request for admissions
10. Express Services' first pre-hearing brief
11. Order on Express Services' motion to dismiss
12. Express Services' witness and exhibit list
13. Express Services' second pre-hearing brief

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on this the 31st day of March, 2017.

| Name | Certified Mail | Via Fax | Via Email | Addresses |
|---|---|---|---|---|
| Eldon B. Jackson | X | | X | 1693 Sparkleberry Drive, Clarksville, TN 37042 ebjackson78@gmail.com |
| Gregory Fuller and Peter Frech, Attorneys for Employer | | | X | ghfuller@mijs.com; ppfrech@mijs.com; rdshulman@mijs.com |

_____
Penny Shrum, Court Clerk
Wc.courtclerk@tn.gov

6